Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, and with the addition and modification of findings of fact, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at the relevant time.
2. Liberty Mutual Insurance Company was the carrier on the risk.
3. The plaintiff's average weekly wage was $364.70, which yields a compensation rate of $243.15.
4. The plaintiff ha[d] not returned to work since neck surgery on July 21, 1993 [as of the date of hearing before the Deputy Commissioner].
5. The issues for determination are:
 a. Whether the plaintiff sustained a compensable injury on July 19, 1993, and if so, to what benefits is he entitled; and
 b. Whether plaintiff's neck surgery on July 21, 1993 and current condition is causally related to the incident on July 19, 1993 or is related to a pre-existing condition.
6. The parties have agreed to stipulate the following documents into evidence:
a. All I.C. Forms, listed in the file;
b. All medical records; and
c. Plaintiff's Recorded Statement.
* * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a fifty year-old male with an eighth grade education. The plaintiff had been employed for ten years with defendant at the chip and sawmill operation.
2. On July 19, 1993, the plaintiff was working as the head labor relief man on the sawmill floor at the Seaboard Plant. Plaintiff's duties involved heavy labor, use of tools, lawn mowers, and weed eaters. Duties required physical activities such as bending, stooping, squatting, and lifting.
3. On July 19, 1993, the plaintiff slipped and fell in a large oil spill on the plant floor. The plaintiff fell, landing on his head and neck. Although he did not recall losing consciousness, the plaintiff did recall being helped up by a co-worker.
4. Following the incident, the plaintiff went home to change clothes. He returned to work an hour later and completed his work shift. Chip Warren, plaintiff's supervisor, arranged for plaintiff to go to Dr. Irwin H. McNeely the next day.
5. Prior to the slip an fall incident on July 19, 1993, the plaintiff had complained of left hand and wrist pain and numbness. The plaintiff had received treatment for carpal tunnel syndrome by Dr. Robert F. Brewer and Dr. McNeely for approximately one month before July 19, 1993.
6. The plaintiff was evaluated by Dr. Anne Redding on July 20, 1993, upon referral by Dr. Brewer for evaluation of carpal tunnel syndrome. Dr. Redding scheduled an MRI of the cervical spine to rule out cervical cord compression. Dr. Redding's notes do not reflect any mention by plaintiff of his fall or injury on July 19, 1993.
7. The MRI scan of July 20, 1993 showed significant spinal cord compression associated with a disk herniation of the C-4, 5 disk, and areas of spinal cord edema or swelling on the spinal cord both at C-3, 4 where there was bone spur formation and a second area of edema in the spinal cord at C-4, 5 where there was a disk herniation.
8. Dr. Alfred P. Magness II, a neurological surgeon whom plaintiff first saw July 20, 1993, testified that plaintiff was found to have a cervical spinal cord problem, called myelopathy — a narrowed spinal canal caused by a degeneration and disk herniation — squeezing his spinal cord in his neck, which required surgery. The MRI scan made July 20, 1993, produced findings that were consistent with the degenerative condition of his spine, including severe spinal stenosis or narrowing of the spinal canal, with central disk protrusion. Plaintiff did not give Dr. Magness a history of accident or injury at that time.
9. On July 22, 1993, the plaintiff underwent a C2-C6 cervical laminectomy by Dr. Magness.
10. The plaintiff was discharged from the hospital on July 28, 1993. He was provide with a cervical collar, and continued in treatment and therapy with Dr. Magness.
11. Dr. Magness also testified that plaintiff gave him a history of three- to four-weeks of leg weakness and other symptoms prior to his fall on July 19, 1993. It is "unlikely that the fall materially contributed to his spinal condition since its symptoms preceded the injury." Plaintiff called Dr. Magness' office on August 12, 1993 and attributed his condition to a fall at work, but, though asked, did not give a date at that time. Dr. Magness' letter of November 4, 1993 reflects plaintiff's later report of having "several falls in 1992, and may have fallen as well in 1993," and that he was applying for workers' compensation. It is more probable that plaintiff's neurological symptoms before and after the fall were caused solely by plaintiff's non-work related myelopathy.
12. On November 4, 1993, the plaintiff returned to Dr. Magness, at which time it was noted that although plaintiff had a cane, he was ambulating independently in the office. The plaintiff demonstrated improved right hand strength and continued weakness and numbness in the left hand
13. The greater weight of the evidence tends to show that plaintiff's neck surgery was a result of the pre-existing condition unrelated to his employment, and that the July 19, 1993 injury by accident did not aggravate or accelerate that condition. Any absences from work following July 19, 1993 were not as a result of the slip and fall, but were due to the non-work-related neck surgery on July 22, 1993.
* * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
The plaintiff's accident on July 19, 1993 did not arise out of his employment with defendant-employer, and therefore his claim must be denied. Cole v. Guilford Co., 259 N.C. 724, 728,131 S.E.2d 308 (1963); N.C. Gen. Stat. § 97-2 (6).
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for benefits must be, and hereby is, DENIED.
2. Each side shall pay its own costs.
 S/ _______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ COY M. VANCE COMMISSIONER
JRW:md 4/7/97